**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **NASON HOMES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:14-cv-01656** |
| | ) | **Chief Judge Sharp** |
| **SINGLETARY CONSTRUCTION, LLC and** | ) | **Magistrate Knowles** |
| **BERT SINGLETARY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

_____

Pursuant to Local Rule 26.04(b), Defendants Singletary Construction, LLC and Bert Singletary (collectively "Defendants" or "Singletary") file this memorandum in support of their motion for summary judgment, seeking to dismiss Plaintiff Nason Homes, LLC's complaint in its entirety.

## I.  INTRODUCTION

As set forth below, Defendants are entitled to summary judgment on Nason Homes' ("Nason Homes" or "Plaintiff") amended complaint for copyright infringement.  Nason Homes cannot carry its burden of establishing essential elements of copyright infringement.  First, Nason Homes cannot prove that it owns a valid copyright in The Alder.  Second, Nason Homes cannot show that The Alder is entitled to any protection under copyright law.  Finally, Nason Homes cannot show substantial similarity between the parties' works given undisputed differences that exist between them.  No genuine dispute of material fact exists and Defendants are entitled to summary judgment as a matter of law.

1

{01307538.1 }

## II. FACTUAL BACKGROUND

On August 13, 2014, Nason Homes filed suit against Singletary Construction, LLC and Defendants for copyright infringement of an architectural work in a residential house titled "The Alder." (Doc. 1, Original Compl., PID#1). Nason Homes is owned by an individual named Stuart Beattie. (Doc. 45, Am. Compl., PID#340, at ¶ 1.) According to John Helmick, the architect who designed it, The Alder is a "box-style 'spec'" home. (Helmick Declaration at ¶ 6.) Mr. Helmick was an independent contractor at the time he designed The Alder. See Doc. 45, Am. Compl., PID#341 at ¶ 2.

Although Mr. Helmick designed The Alder in 2012, (Am. Compl., Doc. 45, PID#345, at ¶ 15), he did not transfer the copyright in it to Nason Homes until 2014. (Helmick Decl. at ¶ 5.) On February 4, 2014, Mr. Beattie presented him with a written *nunc pro tunc* agreement, which both Mr. Helmick and Mr. Beattie signed that day. Id. (copy of *nunc pro tunc* agreement attached to Helmick Declaration). The *nunc pro tunc* agreement states that the "effective date of this Agreement is January 31, 2012," id., but the testimony of both Mr. Helmick and Mr. Beattie does not support that statement; rather, it is undisputed that Mr. Helmick and Mr. Beattie had no prior agreement about such transfer until they signed the *nunc pro tunc* agreement. Mr. Helmick testified in his sworn declaration:

> I didn't orally assign to Nason Homes any rights connected with my technical drawings of The Alder. Further, I did not assign such rights until we parted ways on February 4, 2014, when Mr. Beattie presented me with a written agreement (copy attached here as Exhibit A).

Id. at ¶ 5. Mr. Beattie testified similarly at his deposition. In a line of questions about the *nunc pro tunc* agreement, Mr. Beattie testified:

> Q:   You're not aware of any prior oral or written agreement between the parties, are you, regarding The Alder?

A:      Between Nason Homes and John Helmick?
Q:      That's right.
A:      No.  I'm not aware.

(Beattie Dep. Oct. 14, 2015, at p. 12, ll. 8-13.)

Nason Homes applied for copyright registration for The Alder on January 23, 2014. (Doc. 1-2, Certificate of Registration, PID#14.)  At the time Nason Homes applied for copyright registration for The Alder, Mr. Helmick had not yet transferred the copyright to Nason Homes. (Helmick Decl. ¶ 5; Beattie Dep. Oct. 14, 2015, at p. 12, ll. 8-13.)

In its application for copyright registration, Nason Homes claimed to have rights in the copyright of The Alder through two paths.  First, when asked if The Alder was a "Work made for hire," Nason Homes responded: "Yes."  Id.  Second, when asked if a "Transfer Statement" existed, Nason Homes responded: "By written agreement."  Id.  Nason Homes stated this even though Mr. Helmick had not agreed to transfer copyrights in The Alder at the time.  (Helmick Decl. ¶ 5.)

In actions against different defendants, Nason Homes has made inconsistent representations to the Court about whether it attained rights in The Alder through its status as a work for hire or whether it attained rights through a written assignment.  In a separate action before this Court, Plaintiff elaborated on The Alder's status as a work for hire.  There, Plaintiff represented that

> The Certificate of Registration *correctly* lists Mr. Helmick as the author of the work and that the work was *a 'work for hire*.' . . . *The Registration*, however, *incorrectly states that the parties had executed a written assignment prior to Nason Homes registering its copyright*."

See Nason Homes' Opp. To Defs.' Motion to Dismiss (Doc. 21) in Nason Homes, LLC v. Billy's Construction, Inc., No. 3:14-cv-0566, at PID#111(emphasis added).

Here, in contrast, Nason Homes insists it attained rights in The Alder's copyrights solely through written transfer. In response to Singletary's Motion to Dismiss, Nason Homes stated:

> Plaintiff . . . has consistently told the Copyright Office and this Court that it claims ownership of the copyright of The Alder plan through assignment by the author of the work. . . . Nason Homes has <u>never</u> asserted that it is the author of The Alder Plan (and thus the owner) through the work-for-hire doctrine.

(Doc. 19, Pl's Opp'n to Defs' Mot. to Dismiss, at PID#119) (emphasis in original). Setting aside the fact that Nason Homes was "playing fast and loose with the court," which this Court frowns upon, see <u>Thompson v. Bruister & Associates, Inc.</u>, 3:07-00412, 2013 WL 4507734 (M.D. Tenn. Aug. 23, 2013) (unpublished) (Sharp, J.), Nason Homes has abandoned the work for hire theory and has elected to proceed forward in this case solely under the theory that it acquired rights in The Alder through assignment from Mr. Helmick. (Doc. 19, Pl's Opp'n to Defs' Mot. to Dismiss, PID#122.)

Temporarily setting aside the fatal weaknesses in Nason Homes' ownership of the copyright, Nason Homes remarkably claims it is entitled to copyright protection in the "overall *conception* of the plan." At his deposition, Mr. Beattie testified:



(Beattie Dep. May 13, 2015, at p. 25, ll. 7-24 (emphasis added).)



{01307538.1 }

4



(<u>Id.</u> at p. 37, ll. 9-10; l. 15- p. 38., l. 10 (emphasis added).)



(<u>Id.</u> at p. 87, l. 11 – p. 88, l. 10 (emphasis added).)



Id. at p. 90, l. 24 – p. 92, l. 2 (emphasis added).

At the same time, Nason Homes claims that The Alder consists of nothing but original elements. In response to an interrogatory asking Plaintiff to identify all elements of The Alder that Plaintiff alleges have been infringed in any home built by either Defendant, Plaintiff stated:

> The protectable expression of the copyrighted Alder Plan consists of the selection, arrangement and coordination of the space, elements, and features of the Alder Plan, including the placement, coordination, shapes, arrangement and dimensions *of all features*. "Features," as used herein, includes walls, rooms, closets, doors (internal and external), framing aspects, windows, lighting, patios, garage, and other spaces of the Alder Plan as well as how these features function collectively, interact with each other, etc. The protectable expression of the copyrighted Alder Plan is portrayed in the specimen included with the Copyright Registration (exhibit B to the Amended Complaint). . . .

(Plaintiff's Answer to Revised Interrogatory 6) (emphasis added).

The only expert proof regarding originality comes from Defendants' expert, Peggy Newman. From her experience and the research she conducted, Ms. Newman concludes that

{01307538.1 }

"The Alder contains nothing more than common elements and arrangements." (Newman Report at 1.) In the report, Ms. Newman provides multiple side-by-side comparisons of floorplans and elevations that show The Alder is identical to pre-existing plans and designs. (See id. at 3-31.) She writes: "In fact, many of the elements and arrangements in the Alder appear to mimic and copy quite a number of pre-existing plans and homes." Id. In summary, she states:

> My final conclusion is that the Alder does not contain elements that are original, whether they be exterior elevations, interior layouts or arrangements thereof, or finish details. The designs of these homes seem to contain mostly stock elements needed for functions, and big box finishes . . . . The combination of the interior room vignettes are not unique and appear to be almost identical to many other homes that existed prior to 2012 [when The Alder was designed].

(Id. at 2.)

Nason Homes offered no expert witness, either for its case in chief or in rebuttal to Ms. Newman.

Undermining its own argument that the designs are substantially similar, Nason Homes acknowledges multiple differences between the parties' designs. When asked what differences he sees between The Alder and the home built by Defendants, Mr. Beattie testified:



(Beattie Dep. May 13, 2015, at p. 97, ll. 9-19.) Further, Nason Homes acknowledges that



{01307538.1 }

(Id. at p. 102, l. 25 – p. 103, l. 6.)  Additionally, Nason Homes admits "that the ridge of the Singletary Home is shorter in length than the Alder ridge," (Pl.'s Supp. Response to Req. to Admit 2); "that the Singletary Home added a false gable over the garage," (id. at RFA 3); and "that the Singletary Home has a bay with windows," unlike The Alder.  (Id. at RFA 8.)

## III. LEGAL STANDARD

A party may be awarded summary judgment if the evidence establishes that there are no genuine issues of material fact for trial and it is thus entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the Court that the summary judgment standards set forth in Rule 56 have been met.  See Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986).  The ultimate question is whether there exists any genuine issue of disputed material fact. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

The purpose of summary judgment is to isolate, and then terminate, claims and defenses that are factually unsupported.  See Celotex, 477 U.S. at 323-24.  By moving for summary judgment, a party forces its opponent to come forward with at least one sworn averment of fact essential to that opponent's claims before the time-consuming process of litigation will continue. See Lujon v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

## IV.  ANALYSIS

Nason Homes cannot carry its burden of proof.  As set forth below, Nason Homes does not own a valid copyright, it cannot establish that The Alder is entitled to copyright protection, and it cannot establish substantial similarity.

**A.** **Nason Homes Cannot Establish that It Owns a Valid Copyright.**

      **1.** **Nason Homes' Registration in The Alder is Invalid.**

            **a.** **Defendants Can Rebut the Presumptions of Validity that Accompany the Registration.**

To establish copyright infringement, a plaintiff must prove ownership of a valid copyright. Automated Solutions Corp. v. Paragon Data Systems, Inc., 756 F.3d 504, 519 (6th Cir. 2014) (quoting Feist, 499 U.S. at 361). Although a copyright registration carries with it a presumption of validity and evidence of the ownership, this presumption may be rebutted. Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc., 58 F.3d 1093, 1095 (6th Cir. 1995). The party challenging the presumption bears the burden of proving the registration is invalid. Id. Once the defendant rebuts the presumption, the burden shifts back to the plaintiff to prove the registration is valid. BancTraining Video Systems v. First American Corp., 956 F.2d 268, at *4 (6th Cir. 1992) (unpublished). "[T]he issue of copyright ownership in an infringement action . . . is *an element of the cause of action* [and] the burden of proving ownership is at all times on the party claiming infringement . . . ." Id. (emphasis added) (affirming JNOV for defendant where plaintiff could not prove ownership after defendant rebutted the presumption accompanying the certificate of registration).

"The presumption . . . is not an insurmountable one, and merely shifts to the [challengers] the burden to prove the invalidity of the [ ] copyrights." Marya v. Warner/Chappell Music, Inc., __ F. Supp. 3d __, 2015 WL 5568497, at *5 (C.D. Cal. Sept. 22, 2015) (quoting Masquerade Novelty, Inc. v. Unique Indus., Inc., 912 F.2d 663, 668 (3d Cir. 1990)). "[W]hen there is a material mistake in the registration, the presumption of validity is rebutted, if not voided altogether." Id. (citations omitted).

For example, in <u>Mid-South Inst. of Self Def. Shooting, Inc. v. Habermehl</u>, where the plaintiff stated on the application for copyright registration that it was the owner in the underlying work both through (a) the work for hire doctrine and (b) as the author and owner of the copyright, the defendant successfully rebutted the presumption accompanying the certificate of registration. 221 F.3d 1335, 2000 WL 924598, at *1-3 (6th Cir. 2000) (unpublished). There, it was undisputed that the parties never executed a work for hire agreement, that the defendant was an independent contractor and that the defendant (rather than the plaintiff) authored the underlying work. <u>Id.</u> at *3. Because the plaintiff could not establish the first element of a copyright infringement claim – ownership of a valid copyright – the Sixth Circuit held that the plaintiff's "claim of copyright infringement thus fails" and affirmed summary judgment for the defendant. <u>Id.</u>

As explained below, it was a material mistake for Nason Homes to register The Alder before Mr. Helmick transferred his rights in the copyright to Nason Homes, whether this was caused by mistake or otherwise. Ownership in The Alder remained vested exclusively in Mr. Helmick at the time Nason Homes could have applied for and obtained copyright registration. <u>See</u> 17 U.S.C. § 201 ("Copyright in a work . . . vests initially in the author . . . of the work."). Accordingly, only Mr. Helmick could apply for registration in The Alder at the time registration was obtained. <u>See</u> 17 U.S.C. § 408(a) ("[T]he owner of copyright . . . may obtain registration of the copyright . . . ."). Because it was a material mistake for Nason Homes to obtain registration, the presumption of validity that accompanies the registration in The Alder "is rebutted, if not voided altogether." <u>E.g.</u>, <u>Marya</u>, __ F. Supp. 3d __, 2015 WL 5568497, at *5 (quoting <u>Masquerade Novelty</u>, 912 F.2d at 668). The result is that the present registration is invalid, and it cannot be corrected; given that Nason Homes was not the owner at the time of registration, it

10

would have to apply for and obtain an entirely new registration.  Compendium of U.S. Copyright Office Practices §§ 1802.6(F), 1802.7(B) & (G) (3d ed.).[1]

> **b.**  **Nason Homes Cannot Prove it Had Acquired Rights in The Alder at the Time it Applied for Copyright Registration.**

Nason Homes has denied having ever sought rights in The Alder as a work for hire.[2] (Doc. 119, Pl.'s Resp. to Mot. to Dismiss, PID#119, 122.)  Accordingly, Nason Homes must produce evidence to demonstrate that it acquired the copyright in The Alder through assignment by the author, Mr. Helmick.  See 17 U.S.C. § 201(d) (allowing ownership of copyright to be transferred by means of conveyance).  As set forth below, Nason Homes cannot meet this burden because the evidence shows (1) that Mr. Helmick had no agreement (oral or written) to transfer The Alder to Nason Homes until they signed the *nunc pro tunc* agreement on February 4, 2014, *after* Nason Homes obtained copyright registration on January 23, 2014 and (2) that the *nunc pro tunc* is invalid because the parties backdated it.

The copyright owner of an "architectural work" has the exclusive right to copy, distribute or display the copyrighted work publicly.  17 U.S.C. § 106 (2002).  While the copyright owner can sell or license his rights to someone else, section 204 of the Copyright Act invalidates a

---

[1]      The Compendium is entitled to Skidmore deference, which gives it persuasive power.  Varsity Brands, Inc. v. Star Athletica, LLC, 799 F.3d 468, 480 (6th Cir. 2015) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

[2]      In any event, Nason Homes could not succeed on a work for hire theory even if it wanted to.  As a matter of law, architectural drawings like The Alder can never qualify as a work for hire.  See Warren Freedenfeld Associates, Inc. v. McTigue, 531 F.3d 38, 48–49 (1st Cir. 2008) (finding that architectural drawings do not fit within the taxonomy of works encompassed by the work for hire doctrine); see also 17 U.S.C. § 101 (listing works that qualify as works for hire, and omitting architectural drawings and plans).  Further, it is undisputed that Mr. Helmick was an independent contractor, not an employee of Nason Homes.

purported transfer of ownership unless it is in writing and signed by the owner. 17 U.S.C. § 204(a).

Although Section 204 may be satisfied by an oral assignment that is later memorialized in writing, "[f]or a writing to 'validate' a past transfer, the past transfer must have actually occurred." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 830 (3d Cir. 2011) (affirming summary judgment for defendant in copyright action where plaintiff proffered no evidence that the parties reached an oral agreement on the date referenced in the *nunc pro tunc* agreement). "The 'note or memorandum' does not itself constitute the transfer; rather, the writing renders valid and enforceable in court a change in ownership *that has already taken place*." Id. at 827 (emphasis added) (citing 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03[A][3] & nn. 20–22 (Rev. Ed. 2009)).

A written transfer agreement that backdates a transfer *is invalid* unless the evidence shows that the parties actually had an oral agreement at the time reflected in the writing. See id. at 832. Holding otherwise "would enable a perjured or misremembered writing to override actual historical events." Id. "This is the kind of result that the writing requirement is intended to avoid. We should not construe § 204(a) in a way that would permit such an outcome." Id. "If [the plaintiff] is to get past summary judgment it must present evidence, apart from the [written transfer] itself, that is sufficient to allow a conclusion that the . . . oral assignment actually occurred [on the date referenced in the writing]." Id. Where no such prior oral agreement exists, ownership of the copyright remains with the author. 17 U.S.C. § 201(a). Only the copyright owner can apply for registration, 17 U.S.C. § 408(a), and "[n]o civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made *in accordance with this title*." 17 U.S.C. § 411(a).

{01307538.1 }

It is undisputed in this case that Mr. Helmick did not transfer his copyrights in The Alder to Nason Homes until February 4, 2014 when Mr. Beattie first presented him with the written *nunc pro tunc* agreement.  Both Mr. Helmick and Mr. Beattie agree they had no oral agreement prior to that.  The *nunc pro tunc* agreement states that it is effective "January 31, 2012," but Nason Homes has no evidence that the assignment actually occurred on that date.  Just as in Barefoot Architect, allowing Nason Homes to backdate the transfer "would enable a perjured or misremembered writing to override actual historical events."  632 F.3d at 827.  "This is the kind of result that the writing requirement is intended to avoid."  Id.

### 2. Nason Homes Failed to Obtain Proper Registration, which is a Precondition to Filing a Claim.

The Copyright Act requires a copyright holder to register its copyright in a work with the United States Copyright Office before filing suit for infringement.  Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157 (2010); 17 U.S.C. § 411(a).  "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made *in accordance with this title*."  Id. (quoting 17 U.S.C. § 411(a)) (emphasis added); see also Cruz v. RCA Record Label, No. 3:14-0623, 2015 WL 5023121, at *2-3 (M.D. Tenn. Aug. 24, 2015) (granting motion to dismiss where plaintiff did not set forth sufficient facts to show he complied with the Copyright Act's registration requirements and noting certain requirements that must be met to register a copyright "in accordance with this title").  Thus, Section 411(a)'s "registration requirement . . . [is] a precondition to filing a claim."  Id. at 167.  Courts in the Sixth Circuit have uniformly adopted the "registration" approach, requiring Plaintiffs to possess a valid certificate of registration prior to initiating suit.  Schenck v. Orosz, No. 3:13-CV-0294, 2013 WL 5963557, at *7-8 (M.D. Tenn. Nov. 7, 2013) (unpublished)

{01307538.1 }

(citing <u>Specific Software Solutions, LLC v. Institute of WorkComp Advisors, LLC</u>, 615 F. Supp. 2d 708 (M.D. Tenn. 2009)).

The law recognizes a distinction between (a) copyright protection and (b) enforcement of a cause of action for copyright infringement. "While copyright protection dates from the time that an artist creates an original work that may be copyrighted . . . *a cause of action for infringement cannot be enforced until the artist actually registers the copyright pursuant to the requirements of the Copyright Act*." <u>Coles v. Wonder</u>, 283 F.3d 798, 801 (6th Cir. 2002) (citing 17 U.S.C. § 411(a)) (emphasis added). In <u>Coles</u>, the defendants maintained that the plaintiff failed to obtain a valid registration for a sound recording because he failed to comply with the deposit copy requirement found in Section 408 of the Act when he deposited a reconstruction rather than a copy of the original recording. <u>Id.</u> Noting that a deposit copy is "[a]mong the requirements of copyright registration," the Sixth Circuit affirmed summary judgment for the defendants where the registration requirements were not complied with at the time of application. <u>Id.</u> at 802. <u>See also</u> <u>Sony/ATV Music Publ'g LLC v. D.J. Miller Music Distribs., Inc.</u>, No. 3:09–cv–01098, 2010 WL 3872802, at *4 (M.D. Tenn. Sept. 28, 2010) (concluding after <u>Reed Elsevier</u> that, where plaintiffs did not obtain copyright registrations for six songs before they filed a copyright infringement action, their copyright infringement claims for the six songs were subject to dismissal for failure to state a claim).

Here, where Nason Homes has failed to obtain a valid registration for The Alder, it cannot enforce its cause of action for copyright infringement. As a result, Defendants are entitled to summary judgment. If the Court holds that summary judgment is warranted on the issue of ownership, then no further analysis is required.

**B.      Nason Homes Cannot Establish that The Alder Is Entitled To Copyright Protection.**[3]

Throughout this case, Nason Homes has been putting the cart before the horse – focusing solely on alleged copying.  Before the court even begins to examine substantial similarity, however, the plaintiff must prove its ownership of a valid copyright, as discussed above, and that its work is entitled to copyright protection, as discussed below.

**1.      Plaintiff's "Overall Conception" is Not Protected by Copyright.**

Contrary to the arguments advanced by Nason Homes, "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected.  Originality remains the sine qua non of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author."  Feist Publ.'s, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 348 (1991) (finding a lack of originality to warrant copyright protection in the selection, coordination and arrangement of facts assembled into the telephone book at issue).  Like functional elements of a house, "[n]o matter how original the format, however, the facts themselves do not become original through association."  Id. at 354.  "Not every selection, coordination, or arrangement will pass muster. This is plain from the statute. It states that, to merit protection, the facts [or functional/unoriginal elements] must be selected, coordinated, or arranged 'in such a way' as to render the work as a whole original."  Id. at 358.

While patent law protects conceptions, copyright does not.  "The owner of a patent is granted the exclusive right to exploit for a period of seventeen years (a maximum of fourteen years for design patents) the *conception* that is the subject matter of the patent."  Herbert

---

[3]      By advancing argument regarding substantial similarity, Defendants are not waiving their position that Nason Homes must prove that the designs are virtually identical, given the thin protection that should be accorded The Alder.

{01307538.1 }

15

Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 740 (9th Cir. 1971) (emphasis added) (noting that "the grant of this monopoly . . . is carefully circumscribed by substantive and procedural protections" and citing 35 U.S.C. §§ 154, 173). "Copyright registration, on the other hand, *confers no right at all to the conception* reflected in the registered subject matter. 'Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea – not the idea itself.'" Id. (emphasis added) (quoting Mazer v. Stein, 347 U.S. 201, 217 (1954)). "What is basically at stake is the extent of the copyright owner's monopoly – from how large an area of activity did Congress intend to allow the copyright owner to exclude others?" Id. at 742. "When the 'idea' and its 'expression' are thus inseparable, copying the 'expression' will not be barred, since protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner free of the conditions and limitations imposed by the patent law." Id. (quoting Baker v. Selden, 101 U.S. 99, 103 (1879)). "The guiding consideration in drawing the line is the preservation of the balance between competition and protection reflected in the patent and copyright laws." Id. "In no case does copyright protection for an original work of authorship extend to any idea[.]" Kohus, 328 F.3d at 855 (quoting 17 U.S.C. § 102(b)).

This danger of copyright overprotection is particularly acute in the context of residential architecture. Ralph Oman, who was the Register of Copyrights of the United States when the Architecture Works Protection Act ("AWPA") was enacted by Congress in 1990, testifies in his expert report that "many architects – even the American Institute of Architects – had grave misgiving about full copyright protection for works of architecture." (Oman Report at 5). Despite enacting the AWPA, "Congress made clear that it did not intend to protect commonplace designs of for example, tract homes – these cookie-cutter houses the shape and layout of which

{01307538.1 }

are the common property of all mankind." Id. Mr. Oman was "directly involved" with the enactment of the AWPA, along with William F. Patry, the author of a leading copyright treatise, who served as Mr. Oman's Policy Planning Adviser at the time. Id. Quoting Mr. Patry's treatise, Mr. Oman notes:

> [t]he courts should be particularly wary of granting protection in the area on non-custom residential housing, where there is a vast, existing body of public domain material, the originality (if any) is frequently *de minimis*, and the adverse consequences of overprotection are potentially quite serious.

Id. at 6.

As Mr. Beattie testified repeatedly, Nason Homes is attempting to use copyright to protect "the overall conception" of The Alder, when copyright law provides no such protection. As set forth below, Nason Homes' idea and expression are inseparable, and Nason Homes is not entitled to a monopoly over "box-style 'spec'" homes. Because Nason Homes seeks to use copyright to protect its conception – a right not protected by copyright – Defendants are entitled to summary judgment.

### 2. Plaintiff Cannot Carry its Burden of Establishing which Elements are Original.

The Sixth Circuit employs the following two-part test to determine substantial similarity:

> First, we "identify and eliminate those elements [of a work] that are unoriginal and therefore unprotected." Next, we determine "whether the allegedly infringing work is substantially similar to protect[a]ble elements of the original." "It is axiomatic . . . that mere abstract ideas are not protect[a]ble, but the expression of an idea is." When the work at issue is functional, rather than creative, "it is necessary to eliminate those elements dictated by efficiency."

Automated Solutions Corp. v. Paragon Data Systems, Inc., 756 F.3d 504, 519 (6th Cir. 2014)

(quoting Kohus v. Mariol, 328 F.3d 848, 853-56 (6th Cir. 2003)); see also Tiseo Architects, Inc.

v. B & B Pools Serv. & Supply Co., 495 F.3d 344, 348 (6th Cir. 2007).

Where the plaintiff over-claims protection and fails to identify which elements of its work are original, and thus subject to copyright protection, the court is "'hamstrung' and unable to engage in the necessary first step of the substantial similarity analysis." Id. at 519. In Automated Solutions, although the plaintiff "argued its *conclusion*" that the defendant's work was substantially similar to the plaintiff's, "it offered no evidence [ ] by which a jury could arrive at that conclusion." Id. Accordingly, the Sixth Circuit affirmed summary judgment for the defendant. Id. at 520-21.

The Sixth Circuit reached the same conclusion in R.C. Olmstead, Inc. v. CU Interface, LLC, 606 F.3d 262 (6th Cir. 2010), affirming summary judgment for the defendant where the plaintiff over-claimed protection. "All of the evidence offered by Olmstead clearly lacks the abstraction and filtration elements." Id. at 275. Elaborating, the Sixth Circuit explained: "Olmstead has not attempted to identify those elements of its software that are original; thus its substantial similarity analysis does not filter elements that would be expected to be common to any credit union software, those dictated by the particular business practices." Id. Accordingly, the Sixth Circuit Court concluded that the plaintiff had failed to create a triable issue of fact as to whether the defendant had copied *original* elements of the plaintiff's work. Id. at 276.

In Kalpakian, where the plaintiff asserted that its copyright registration of a jeweled bee was entitled it to "protection from the manufacture and sale by others of any object that to the ordinary observer is substantially similar in appearance," the court explained that "[t]he breadth of this claim is evident." 446 F.2d at 740. There the plaintiff over-claimed copyright protection: "Although plaintiff's counsel asserted that the originality of plaintiff's bee pin lay in a particular arrangement of jewels on the top of the pin, the elements of this arrangement were never identified." Id. Affirming judgment for the defendants, id. at 739, the court explained: "There is

no greater similarity between the pins of plaintiff and defendants than is inevitable from the use of jewel-encrusted bee forms in both." Id. at 742.

Here, summary judgment is appropriate because Nason Homes has failed to identify which elements of The Alder are original. Similar to the plaintiffs in the above cases, Nason Homes claims that "all features" are protectable. In so doing, it has hamstrung the Court, making it impossible to filter out the unoriginal, functional elements of the design. As such, Plaintiff has failed to carry its burden of establishing which elements of The Alder, if any, are original and thus entitled to copyright protection.

Further, the Sixth Circuit has held that "expert testimony will likely be required" to establish which elements are original and which are dictated by function or efficiency, in other words, which are unoriginal. Kohus, 328 F.3d at 856; accord Olmstead, 606 F.3d at 275. Here, the only expert proof in the record regarding originality is that of Ms. Newman, Defendants' expert. After examining The Alder, she provides numerous side-by-side comparisons of elements and arrangements that existed well before the creation of The Alder, and concludes that The Alder is comprised solely of common elements and arrangements. Nason Homes' failure to proffer expert proof only compounds its inability to prove any originality of The Alder.

C.      **Nason Homes Cannot Establish Substantial Similarity, given the Undisputed Differences between the Designs.**[4]

The plaintiff in a copyright action carries the burden of proving substantial similarity. See also Tiseo Architects, 495 F.3d at 347. There the Sixth Circuit affirmed summary judgment for the defendant, even though the district court noted that the floor plans of both parties were

---

[4]      Defendants reserve the right and do not waive the argument that the copyright registration for The Alder is only in the architectural work and not in the technical drawings.

"very, very similar . . . you can just look at the two drawings and see that they are substantially similar." Id. at 347. Nevertheless, after filtering out the unprotectable elements, the court found there "weren't a lot of ways to lay out these offices" and that the plaintiff failed to prove the drawings were substantially similar given differences in materials used, rooflines and windows. Id. The Sixth Circuit affirmed the district court's finding that the defendant's work did not infringe the plaintiff's copyright. Id. at 348.

As stated above, Nason Homes has failed to identify which elements, if any, are original. Even if Nason Homes could identify original, non-functional elements, the existence of undisputed differences between The Alder and Defendants' design leads to the same conclusion reached by the Tiseo Architects court – that the designs are not substantially similar. There, the court identified differences in materials used, rooflines and windows. Here Nason Homes concedes that multiple differences exist in the parties' designs, including but not limited to entirely different placements of the kitchen, breakfast room, laundry room and back porches; different sizes of the dining room, laundry room and closets; alterations to the bathroom; and the addition of a bay window and a false gable. As with any house, there are not "a lot of ways to lay out" the rooms. Id. at 347. Instead, both The Alder and Defendant's design "contain mostly stock elements needed for function." (Newman Report at 2.) Just as in Tiseo Architects, Plaintiff has not carried its burden of establishing which elements of The Alder, if any, are original. Accordingly, summary judgment should be granted to Defendants.

## V. CONCLUSION

Nason Homes cannot establish several elements of its claim for copyright registration. First, its registration in The Alder is invalid: Nason Homes had no rights in The Alder at the time it applied for copyright registration. Similarly, the *nunc pro tunc* agreement which purports to

backdate the transfer from Mr. Helmick to 2012 is invalid since the undisputed evidence shows the parties had no agreement to transfer the copyright until February 4, 2014. Because Nason Homes has no valid registration (and cannot merely correct the existing one), it cannot maintain this enforcement action as a matter of law.

Second, Nason Homes cannot show that The Alder is entitled to copyright protection. Nason Homes seeks to protect the "overall conception of its plan," but copyright does not protect ideas. Without identifying which elements are original and which are functional and unoriginal, Nason Homes seeks to protect *all* aspects and features of The Alder, leaving the Court hamstrung and unable to conduct the filtering required in the Sixth Circuit. Nason Homes essentially seeks a monopoly over all "box-style spec" homes, something Congress warned against providing through copyright. Each of these items alone entitles Defendants to summary judgment.

Third, Nason Homes cannot show substantial similarity between The Alder and Defendants' design because Nason Homes concedes multiple differences exist between them. Accordingly, Defendants are entitled to summary judgment.

To the extent summary judgment does not dismiss the case in its entirety with prejudice, summary judgment is proper concerning statutory damages and attorneys' fees. As set forth above, Nason Homes does not own a valid registration for The Alder. Accordingly, because the alleged infringement began prior to the receipt of a valid registration, Nason Homes is not entitled to statutory damages or attorneys' fees. See 17 U.S.C. § 412.

For all these reasons, Defendants urge the Court to grant summary judgment and dismiss the case in its entirety with prejudice.

Dated:  October 30, 2015.

Respectfully submitted,

/s/ Stephen J. Zralek
Stephen J. Zralek, BPR No. 18971
Mandy Strickland Floyd, BPR No. 31123
511 Union Street, Suite 1600
Nashville, Tennessee 37219
Telephone: (615) 238-6300
Facsimile:  (615) 238-6301
szralek@bonelaw.com
mfloyd@bonelaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2015, I served the foregoing document via ECF on the following counsel of record.

Richard G. Sanders, Esq.
Aaron & Sanders, PPLC
810 Dominican Dr., Ste. 208
Nashville, TN 37228
Telephone: (615) 734-1188
Facsimile:  (615) 250-9807
rick@aaronsanderslaw.com


David M. Lilenfeld, Esq.
Robin L. Gentry, Esq.
Lilenfeld PC
2970 Peachtree Road, N.W., Suite 530
Atlanta, Georgia  30305
Telephone: (404) 201-2520
Facsimile:  (404) 393-9710
David@LilenfeldPC.com
Robin@LilenfeldPC.com

/s/ Stephen J. Zralek

{01307538.1 }