UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NASON HOMES, LLC, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Civil No. 3:14-cv-1656 ) Judge Sharp ) |
| SINGLETARY CONSTRUCTION, LLC; BERT SINGLETARY, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM

Plaintiff Nason Homes, Inc. brings a claim for copyright infringement against Defendants Bert Singletary and Singletary Construction, LLC. Plaintiff's Complaint (Docket No. 45) alleges that Defendants used Plaintiff's copyright-protected architectural plan to frame a home in Clarksville, Tennessee. Defendants have filed a motion for summary judgment (Docket No. 69) against Plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The Court will grant Defendant's motion.

## BACKGROUND

The following facts are undisputed. Plaintiff Nason Homes, Inc. is a residential home construction company based in Georgia. Stuart Beattie is the only owner of Nason Homes. (Docket No. 82-1, p. 1.) Defendant Singletary Construction, LLC is a Tennessee corporation based in Clarksville, Tennessee. Defendant Bert Singletary is the only owner of Singletary Construction. (See Docket No. 46, p. 2.)

1

In 2012, Plaintiff hired a contractor named John Helmick, Jr. to design several residential houses for Plaintiff.[1] One of those designs is known as the Alder Plan ("Alder Plan" or "Alder"). The Alder Plan is a detailed architectural drawing of a two-story home with five bedrooms. (See Docket No. 82, Ex. A.) The first floor consists of a dining room, a kitchen with a breakfast nook, a bedroom, a bathroom, and a family room with a vaulted ceiling. (Id.) The second floor consists of a master bedroom, three smaller bedrooms, two bathrooms, and a walk-in closet. (Id.) The two floors are connected by a two-story foyer with a staircase in the front of the house. (Id.) The front of the house has two slim vertical windows on either side of a wooden door. (Id.)

On January 23, 2014, Plaintiff registered the Alder Plan with the United States Copyright Office under Registration No. VA0001888774. (See Docket No. 82, Ex. E.) The Certificate of Registration lists the Alder's original author as "John Helmick, Jr." and shows that the copyright was transferred to Plaintiff "[b]y written agreement." (Id.)

On February 4, 2014, Helmick signed a *nunc pro tunc* agreement that assigned to Plaintiff all of his copyrights in the Alder. (See Docket No. 73, Ex. A, pp. 1–2.) The assignment agreement states that "[t]he effective date of this Agreement is January 31, 2012." (See Docket No. 73, Ex. A, p. 1.)[2]

Plaintiff filed this suit on August 13, 2014. Its complaint alleges that Defendants infringed Plaintiff's copyright by building homes that are "virtually exact replicas of the Alder Plan." (Docket No. 45, p. 7.) On October 30, 2015, Defendants moved for summary judgment on all of Plaintiff's claims. (See Docket No. 69.)

---

[1] For the purposes of Defendants' summary-judgment motion, Plaintiff does not dispute that Helmick was an independent contractor when he designed homes for Plaintiff. (See Docket No. 82-1, p. 2.)
[2] Plaintiff argues that Helmick transferred his copyright ownership to Plaintiff in 2012. Defendant disagrees. See Docket Nos. 70, p. 10; 82, pp. 2–3.

2

## LEGAL STANDARD

Summary judgment "is appropriate only where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Whitfield v. Tenn., 639 F.3d 253, 258 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(c)). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A court's function at the summary-judgment stage is simply to "determine whether there is a genuine issue for trial." Id. at 249. In doing so, a court must draw "all reasonable inferences in favor of the nonmoving party." Shreve v. Franklin Cty., Ohio, 743 F.3d 126, 132 (6th Cir. 2014) See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). A copyright-holder has certain exclusive rights to the work, including the right to reproduce the work. Id. at § 106. Copyright protection extends to architectural plans or drawings. Id. § 102(a)(8).

To defeat summary judgment, Plaintiff must show genuine issues of material fact as to (1) whether Plaintiff owned a valid copyright in the Alder and (2) whether Defendant copied original or protectable aspects of the Alder. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 348 (1991); Stromback v. New Line Cinema, 384 F.3d 283, 293 (6th Cir. 2004).

3

### I. Ownership of a Valid Copyright

A copyright "vests initially in the author . . . of the work." 17 U.S.C. § 201. Of course, copyrights, like other property rights, can be transferred between people. Id. A key issue in this case is whether such a transfer ever took place.

Defendants argue that Helmick never orally transferred his copyright to Plaintiff in 2012. Because there was never any transfer until February 2014, Defendants continue, Plaintiff's January 2014 Copyright Registration—which is required for Plaintiff's infringement claim—is invalid. (See Docket No. 75-1, pp. 9–14.)

Plaintiff offers three arguments in response: (1) Defendants lack standing to challenge any copyright transfer between Helmick and Plaintiff; (2) even if Defendants have standing to challenge the underlying copyright transfer, there are genuine questions of fact regarding that transfer; and (3) Defendants have not shown that Plaintiff acted fraudulently, which is "require[d] . . . to invalidate a copyright registration" in the Sixth Circuit. (Docket No. 82, p. 8.)

#### A. Do Defendants Have Standing to Challenge the 2012 Assignment?

The Copyright Act requires that any "transfer of copyright ownership" be made "in writing[,] . . signed by the owner of the rights conveyed." 17 U.S.C. § 204(a). However, "virtually all courts" recognize "that an after-the-fact written assignment confirming an earlier oral transfer complies with section 204(a)." WILLIAM F. PATRY, 6 PATRY ON COPYRIGHT §§ 5:11; 21:22 (2015). See also, e.g., Stewart Title of Cal., Inc. Fidelity Nat'l Title Co., (9th Cir. 2008); Eden Toys, Inc. v. Florelee Undergarment Co., Inc., 697 F.2d 27, 36 (2d Cir. 1982).

Many courts have also held that a third-party infringer cannot invoke § 204(a)'s writing requirement in order to escape liability. See, e.g., Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 827–29 (3d Cir. 2011); Billy-Bob Teeth, Inc. v. Novelty, Inc., 329 F.3d 586, 593 (7th Cir.

4

2003); Imperial Residential Design, Inc.v. Palms Dev. Grp., Inc., 70 F.3d 96, 99 (11th Cir. 1995); Eden Toys, Inc. v. Florelee Undergarment Co., Inc., 697 F.2d at 36 (2d Cir. 1982); Great S. Homes, Inc. v. Johnson & Thompson Realtors, 797 F. Supp. 609, 611 (M.D. Tenn. 1992). Plaintiff cites these cases and argues that Defendant—an alleged third-party infringer—may not challenge the February 2014 *nunc pro tunc* assignment agreement by attacking the 2012 transfer that it purports to validate.

Yet in each of the cited cases, there was no dispute between the transferee and transferor that a copyright had really been transferred. In Billy-Bob Teeth, Inc. v. Novelty, Inc., 329 F.3d 586, 593 (7th Cir. 2003), the court found that a defendant lacked standing only after finding "[t]hat there is no dispute between [the original owner and the transferee]." Similarly, in Eden Toys, Inc. v. Florelee Undergarment Co., Inc., 697 F.2d 27, 36 (2d Cir. 1982), the court noted that, "[i]n this case, . . . the copyright holder appears to have no dispute with its licensee" as to existence of prior oral transfer. The same was true in Imperial Residential Design, Inc. v. Palms Development Group, Inc., 70 F.3d 96, 99 (11th Cir. 1995), Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 827–29 (3d Cir. 2011), and Great Southern Homes, Inc. v. Johnson & Thompson Realtors, 797 F. Supp. 609, 611 (M.D. Tenn. 1992).

This case is different. Helmick, the original copyright owner, denies having made any oral transfer to Plaintiff. In his declaration, he states that he "didn't orally assign to Nason Homes any rights connected with my technical drawings of the Alder." (Docket No. 73, p. 1.) Instead, he maintains that he first transferred his rights "on February 4, 2014, when Mr. Beattie presented [him] with a written agreement." (Id.)

Given the parties' disagreement, § 204(a) does not keep Defendants from attacking the validity of the *nunc pro tunc* agreement or the 2012 oral transfer. See Bridgeport Music, Inc. v.

5

Chrysalis Songs, 2002 WL 33949859, at *4–5 (M.D. Tenn. Sept. 12, 2002) (finding that defendants had standing to challenge the validity of a prior oral transfer that was "hotly contested" by the original owner). Defendant has standing to challenge the validity of the 2014 copyright assignment, along with any 2012 oral transfer that the 2014 assignment validates.

### B. Did Plaintiff Own a Valid Copyright to the Alder in January 2014?

Defendants argue that Plaintiff did not own a copyright in the Alder Plan before February 4, 2014. Specifically, they contend that Beattie and Helmick "had no agreement . . . to transfer [t]he Alder to [Plaintiff] until" they executed the *nunc pro tunc* agreement. (Docket No. 75-1, p. 11.)

The Court agrees. All of the testimonial evidence suggests that there was never any copyright transfer in 2012. (See Docket No. 70, p. 13.) Helmick and Beattie both testified that Helmick first transferred the Alder copyright on February 4, 2014. In his declaration, Helmick said that he "didn't orally assign to Nason Homes any rights connected with my technical drawings of the Alder." (Docket No. 73, p. 1.) He also said that he "did not assign such rights until we parted ways . . . when Mr. Beattie presented me with a written agreement." (Docket No. 73, p. 1.) That written agreement, attached as Exhibit A to Helmick's declaration, is the *nunc pro tunc* agreement that he signed on February 4, 2014. (See Docket No. 73, Ex. A.)

In his own deposition, Beattie said the same thing:

> Q:   You're not aware of any prior oral or written agreement between the parties, are you, regarding the Alder?
>
> A:   Between Nason Homes and John Helmick?
>
> Q:   That's right.

6

A:        No. I'm not aware.[3]

(Docket No. 72-1, p. 2.)

Still, Plaintiff maintains that there are question of fact about whether Helmick transferred the copyright in 2012. Plaintiff first argues that Helmick "understood the [Alder] to be a work-made-for-hire," which implies that he "understood . . . that Nason Homes would be the owner of the [Alder] copyright." (Docket No. 82, p. 5.) Plaintiff also contends that the parties' "course of conduct"—namely, Helmick's acceptance of payment for plans to the Alder—shows "[Helmick's] intention to transfer any ownership rights" to Plaintiff. (Docket No. 82, p.6)

Both arguments fail. First, Helmick's "understanding" that the Alder was a work made for hire is immaterial. Architectural drawings are not "works for hire" under the Copyright Act. See, e.g., Warren Freedenfeld Assocs., Inc. v. McTigue, 531 F.3d 38, 48–49 (1st Cir. 2008) ("[T]he Copyright Act enumerates certain types of works encompassed by the work for hire doctrine, and architectural drawings do not fit within that taxonomy."); Richard J. Zitz v. Pereira, 225 F.3d 646, at * 4 (2d Cir. 2000) ("[D]rafting of architectural blueprints does not fit into any of the . . . nine categories of 'specially ordered' work work."); Dorchen/Martin Assocs., Inc. v. Brook of Cheboygan, Inc., 2012 WL 4867608, at *4 (E.D. Mich. Oct. 15, 2012). And even if the architectural drawings *were* works for hire, Sixth Circuit precedent requires the assignment agreement to be in writing: As an independent contractor, Helmick would have to formalize any work-for-hire arrangement in a signed, written contract. See Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc., 58 F.3d 1093, 1095 (6th Cir. 1995) (finding that work-for-hire

---

[3] Plaintiff tries to contradict this testimony with another declaration from Beattie. This new declaration—signed and submitted on November 30, 2015, as part of Plaintiff's summary-judgment response—states that Helmick and Beattie "understood" in 2012 that Plaintiff was the sole owner of the Alder copyright. (Docket No. 82, Ex. F, pp. 2–3.) It would be improper to use this declaration to find a disputed issue of material fact: the Sixth Circuit has long held that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986). See also McClain v. Mason Cty., Ky., 618 Fed. App'x 262, 266 (6th Cir. 2015). Accordingly, the Court does not consider the November 30 declaration as part of the summary-judgment record.

7

copyright-transfer agreement between employers and independent contractors must be "in a written instrument signed by" both parties).

Second, the course of conduct between Helmick and Plaintiff does not show Helmick's intention to transfer the copyright. Under Georgia law,[4] "it must be shown that there was a meeting of the minds of the contracting parties—mutuality—as to every essential element of [an] oral agreement." Goldstein v. Kellwood Co., 933 F. Supp. 1082, 1087 (N.D. Ga. 1996). This requires that the contract be "expressed plainly and explicitly enough to show what the parties agreed upon." Super Valu Stores, Inc. v. First Nat'l Bank of Columbus, Ga., 463 F. Supp. 1183, 1193 (M.D. Ga. 1979). Yet nothing in the record suggests that there was any explicit oral contract between Helmick and Plaintiff. Instead, Plaintiff contends that there was "an understanding among the parties in 2012." (Docket No. 82, p. 6.) Without more, a mere understanding is not enough to create a genuine issue of material fact as to the presence of an oral contract. Cf. Pharr v. Olin Corp., 715 F. Supp. 1569, 1574 (N.D. Ga. 1989) (finding that, where "there was not any meeting of the minds," a party's "testimony that such an arrangement was 'understood' does not constitute a contract").

This leaves only the *nunc pro tunc* agreement itself. Plaintiff argues that the agreement shows a dispute of fact as to the date that Helmick intended to transfer the copyright. Plaintiff points out that "John Helmick executed the agreement assigning his entire interest in copyrights for the Alder Plan with an effective date of January 2012." (Docket No. 82, p. 4.) Plaintiff

---

[4] Federal courts generally apply state law to determine whether a copyright-assignment contract has been formed. See Johnson v. Jones, 885 F. Supp. 1008, 1014 (E.D. Mich. 1995). As the forum state, Tennessee choice-of-law principles determine which state's law should be applied. See Maxwell v. Stanley Works, 2006 WL 1967012, at *6 (M.D. Tenn. 2006). This means that the Court should apply "the law of the state with the most significant relationship to the occurrence and the parties." Id. Because this inquiry involves a *nunc pro tunc* agreement and an alleged oral transfer between two Georgia-based parties, see Docket No. 73, Ex. A, p. 1, Georgia law should apply.

8

argues that this "demonstrates that Mr. Helmick transferred his right by written assignment to Nason Homes in 2012." (Id. at 3.)

Not so. For the 2014 agreement to validate an earlier oral copyright assignment, Plaintiff must show that the oral assignment actually occurred. Every Circuit faced with this issue has come to the same conclusion. In Barefoot Architect, 632 F.3d at 832, the Third Circuit held that a Plaintiff "must present evidence, apart from the Memorandum of Transfer itself, that is sufficient to allow a conclusion that the [prior] oral assignment actually occurred." And in Budget Cinema, Inc. v. Watertower Associates, 81 F.2d 729, 733 (7th Cir. 1996), the Seventh Circuit held that, without "evidence that [a plaintiff] discussed the rights to the work with [an author] prior to the registration, [the plaintiff] cannot invoke" § 204(a) to claim that the assignment is valid. See also Billy-Bob Teeth, 329 F.3d at 593 (7th Cir. 2003) (reversing district court's summary-judgment ruling, which had been based on a lack of credible evidence of an earlier agreement, and pointing out that author and transferee testified about the prior oral transfer). Other than the 2014 agreement, Plaintiff has produced nothing to show that any oral assignment ever took place.

### C. Does Plaintiff have a Valid Copyright Registration for the Alder?

Defendants argue that Plaintiff failed to properly register a copyright to the Alder. (See Docket No. 75-1, pp. 13–14.) Because ownership is a prerequisite to registration, they continue, Plaintiff's January 23, 2014 registration is invalid. (See Docket No. 75-1, pp. 13–14.)

The Court agrees. The Copyright Act requires a plaintiff to apply for registration before suing for copyright infringement. 17 U.S.C. § 411(a). See also Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157 (2010) ("[T]he Copyright Act . . . requires copyright holders to register their works before suing for copyright infringement."); Schenck v. Orosz, 2013 WL 5963557, at *7–8

9

(M.D. Tenn. Nov. 7, 2013). The Copyright Office will grant a request for registration only when the claimant already owns a copyright when he applies. See COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES, ("COMPENDIUM") § 404; see also Varsity Brands v. Star Athletica, LLC, 799 F.3d 468, 477–78 (6th Cir. 2015) (applying deference to the Compendium under Skidmore v. Swift & Co., 323 U.S. 134 (1944)). If a claimant does not own the copyright, the Copyright Office "will refuse to register the work." COMPENDIUM § 608.

Defendants point out that Plaintiff's January 23, 3014 registration certificate lists the copyright claimant as "Nason Homes, LLC." (Docket No. 82-6, p. 2; 75-1, p. 3.) That certificate also indicates that Plaintiff owned the copyright "[b]y written agreement." (Docket No 82-6, p. 2.) But as Helmick and Beattie both testified, this information was incorrect: the record plainly shows that Helmick "didn't assign [his] rights until [he and Beattie] parted ways on February 4, 2014." (Docket No. 73, p. 1.) And Plaintiff has not offered any evidence that it owned the copyright before this date.

Based on the evidence, the information on the registration was false. Still, 17 U.S.C. § 411(b) states that a copyright registration is valid "regardless of whether the certificate contains any inaccurate information," unless the applicant knew that the information was inaccurate and the "inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse the registration." 17 U.S.C. § 411(b). Thus, the inaccuracy raises two issues for the Court: (1) whether Plaintiff knew that it did not own a copyright to the Alder; and (2) whether the inaccuracy would have led the Copyright Office to deny Plaintiff's application.

Both issues are clear cut. First, the record shows that Plaintiff knew that it owned no copyright in the Alder in January 2014. Beattie's deposition made clear that he and Helmick never entered any "prior oral or written agreement" about the copyright to the Alder; Helmick's

declaration says the same thing.  (Docket Nos. 72-1, p. 2; 73, p. 1.)  And the *nunc pro tunc agreement* never suggests that Plaintiff believed Helmick had transferred his rights before February 4, 2014: the text of the agreement set the effective date of the transfer as "January 31, 2012," but mentions no prior transfer that the agreement is meant to ratify.  (Docket No. 73, Ex. A, p. 1.)  Even if Beattie believed that the *nunc pro tunc* agreement had made the assignment retroactive on February 4, 2014, he knew on January 23, 2014 that Helmick still owned the copyright.

Second, the inaccuracy would have led the Copyright Office to deny Plaintiff's copyright registration.  According to the Copyright Office's guidelines, "[t]he only parties who are eligible to be the copyright claimant are (i) the author of the work, or (ii) a copyright owner who owns all of the exclusive rights in the work."  COMPENDIUM § 404.  Plaintiff fit neither description: Helmick was the author of the Alder Plan and Plaintiff owned no copyright in the Alder Plan when he applied for registration.  The registration would have been denied.  Id. § 608 ("Examples of situations where the Office will refuse to register a claim include: . . . [when t]he claimant named in the application is not a proper copyright claimant.").

Plaintiff did not own a copyright to the Alder on January 23, 2014, so it could not register for a copyright in the Alder.  Without a valid copyright registration, its claim for infringement fails.  See, e.g., Coles v. Wonder, 283 F.3d 789, 801 (6th Cir. 2002) ("[A] cause of action for infringement cannot be enforced until the artist actually registers the copyright pursuant to the requirements of the Copyright Act.")

### D. Are Defendants Required to Show Fraud to Invalidate Plaintiff's Copyright Registration?

Finally, Plaintiff argues that the Sixth Circuit "requires a finding of fraud to invalidate a copyright registration."  (Docket No. 82, p. 8.)  Specifically, Plaintiff points to Advisors, Inc. v.

11

Wiesen-Hart, Inc., 238 F.2d 706 (6th Cir. 1956). There, the Sixth Circuit held that a simple "error, in the . . . certificate of registration, unaccompanied by fraud" would not invalidate a copyright registration. Id. at 708. Plaintiffs rely on Advisors, Inc. to argue that Defendants "cannot prevail even if an error was made" on the registration, since Defendants "do not claim fraud" in their summary-judgment motion. (Docket No. 82, p. 8.)

But Advisors, Inc. was limited to instances in which there was an "innocent mistake, or a clerical error" in the registration materials. Id. Nothing in the record suggests that the inaccuracies on Plaintiff's registration certificate were the result of simple oversight. As detailed above, Plaitniff knew on January 23, 2014 that Helmick had never transferred the copyright, let alone done so through a "written agreement" with Plaintiff. (Docket no. 82, Ex. E, p. 1.) Moreover, the inaccuracies on Plaintiff's registration were not minor mistakes—they were material misstatements that would have led the Copyright Office to reject the application. See COMPENDIUM § 608.

Defendant does not need to show fraud in order to invalidate Plaintiff's copyright registration.

## CONCLUSION

Plaintiff has failed to show that it owned a valid copyright in the Alder when it registered its copyright. Since Plaintiff's copyright is invalid, it has not met a prerequisite for bringing an infringement claim. See Reed Elsevier, Inc, 559 U.S. at 157. Its claim fails as a matter of law.

Accordingly, the Court will GRANT Defendant's motion for summary judgment. An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE